FIDELITY-PHENIX FIRE INS. CO. OF NEW YORK *v.* JACKSON
*et al.*

(*Nashville*, December Term, 1943.)

Opinion filed June 10, 1944.

CORNELIUS, McKINNEY & GILBERT, of Nashville, for complainant-appellee.

WALKER & HOOKER, of Nashville, for defendant-appellant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is a suit to recover from the sureties on a bond executed by Jackson Insurance Agency, Incorporated, as principal, to complainant. The question presented on this appeal is twofold: whether or not the decree adjudging liability against the sureties is justified by (1) the language of the bond when properly construed and (2) the case for relief made by the bill.

The bill, filed in 1932, alleged that the Agency had breached the bond "in that it failed to properly account for, pay over and apply all sums of money received by it, as agent, and the sum unaccounted for is $5434.83. The penalty for breach fixed in the bond was $5000."

In their answer defendants specifically deny that "said Agency breached the terms of any bond signed by either of these defendants, and deny that said Agency failed to pay over promptly to complainant all sums received by it, as agent, and further deny that said agency received the sum set forth in the bill," etc.

On December 1, 1939, a decree was entered by then Chancellor, R. B. C. Howell, which (1) dismissed the bill as to R. F. Jackson, Sr., a leading member of the Nashville bar, a defendant surety, who had died since the

bringing of the suit; and (2) striking the answer of R. F. Jackson, Jr., who had been the president and manager of the incorporated Agency, on the ground that he had not been made a party defendant, leaving as the sole defendant surety Mrs. Mannie B. Jackson, widow of R. F. Jackson, Sr., who had been a cosurety, with her deceased husband on the bond. The decree thereupon proceeds as follows:

"Whereupon the cause came on for further hearing upon the original bill and exhibits, the answer of defendant, Mannie B. Jackson, as amended, and exhibits, the evidence in the cause, exhibits thereto, and upon the entire record, and from all of which it not clearly appearing to the Court the amount or amounts of premiums *collected by the Jackson Insurance Agency* during the period October 1st, 1931 and March 1st, 1932, due to the complainant, and *which were not remitted to the complainant by said agency*:

"It is, therefore, ordered, adjudged and decreed that the cause be and same is referred to the Clerk and Master to report, from the proof and exhibits on file, and any other evidence which may be presented to the Clerk and Master by the parties:

" (1) The *amount of premiums due to the complainant.* Fidelity-Phenix Fire Insurance Company, on business written by the Jackson Insurance Agency, Inc., for said Insurance Company, during the period October 1st, 1931 to March 1st, 1932, which were *collected by said Jackson Insurance Agency, Inc., and not remitted by it to the complainant.*"

We have italicised certain language, the pertinency of which emphasis will later appear. This decree of Chancellor Howell was signed as evidencing approval, by Cornelius, McKinney & Gilbert as solicitors for complain-

ant, who apparently had succeeded solicitors Hume & Armistead, who had filed the bill, in the representation of the complainant.

In March following the Master filed his report, pursuant to the order of reference, showing $518.62 to be "The amount of premiums due to the complainant, Fidelity-Phenix Fire Insurance Company, on business written by the Jackson Insurance Agency, Inc., for said Insurance Company during the period October 1st, 1931 to March 1st, 1932, which were collected by said Jackson Insurance Agency, Inc., and not remitted by it to the complainant."

Solicitors for defendant thereupon filed exceptions which were overruled by the Master and an appeal taken to the Chancellor. The details of this report and the exceptions thereto are immaterial to the determinative issues now before us. It is pertinent, however, to note that both the report and the exceptions are clearly limited and restricted to consideration and determination of the amount which had "been collected by Jackson Insurance Agency, Inc., and not remitted by it to complainant," to quote from the exceptions filed by solicitors for complainant.

The next step taken in the cause was the filing of an opinion, on July 23, 1942 (ten years after the suit was brought) by Chancellor Thomas A. Shriver, who had succeeded to the office upon the elevation of Chancellor Howell to the Court of Appeals.

The opinion overrules the exceptions to the report of the Master and confirms that report, which fixed at $518.62 the balance which had been collected and not remitted by the Agency. The Chancellor then presents for the first time, and so far as appears upon his own motion, the question of the liability of the sureties upon the bond for any and all indebtedness of the agency to

complainant, without limitation to such sums as had been *collected and not remitted*, a limitation, as has been seen, contained in the original bill, recognized in the answer and in the decree of reference, the report of the Master and the exceptions of complainant thereto. The Chancellor says, "the Court *is not now* (emphasis ours) of the opinion that the measure of liability in this cause is to be determined by the matters contained in said reference and report." He might properly have added, "charged as a liability in the bill." The opinion proceeds:

"After a full and careful examination of this entire record, and a re-examination of several parts of it, the Court is fully convinced that the only matter for determination is an interpretation of the bond (Exhibit 'A' to the original bill) and the extent of the liability of Mrs. Mannie B. Jackson thereunder.

"There is no serious dispute in the record that the Jackson Insurance Agency, Inc., is indebted to the complainant, Fidelity Fire Insurance Company, in an amount of more than $5,000.00 ($5,362.19, to be exact) and the court so finds. The face of the bond is $5,000.00.

"It is therefore the contention of the complainant that the liability under the terms of the bond is $5,000.00 and that judgment for that amount should be rendered."

The opinion then sets out the contentions of the defendant surety that (1) liability on the bond is only for sums collected for and not remitted to the Insurance Company, and (2) that the surety is not liable for the balance reported of $518.62,—this upon the theory that this sum was collected by a selected representative of complainant and other insurance companies whom the Agency had represented, who was placed in charge of the business by agreement of the parties. This second

contention was first disposed of by the Chancellor who reviewed an agreement, under which this selected representative had conducted the agency business for a time, and decreed adversely to the contention of the defendant, and we see no error in his holding, affirmed by the Court of Appeals, in this regard.

The learned Chancellor then discusses and disposes of what he conceived to be the determinative question, "What liability of the insurance agency is covered by the terms of the bond so as to render the sureties thereon liable?" After quoting from the bond he comments as follows:

"The Court approached the determination of this cause with the inclination to limit the liability of Mrs. Jackson, the surety on the aforesaid bond, to the net amount owing complainant by reason of premiums collected and unaccounted for, from October, 1931 to March, 1932, but, after careful consideration, is of the opinion that the language of the bond is susceptible of no other interpretation than that the sureties thereon are liable for 'all amounts due or that may become due it (the complainant), from time to time for premiums—and/or balances of accounts . . . and for all other amounts whatsoever that may be due and payable to the company . . . or claims and demands due or owing at any time by him to said company.'

"It therefore follows that complainant will be awarded a judgment against the surety on the aforementioned bond for the full face thereof, and a decree in accordance with the above will be entered."

The Court of Appeals affirmed, Judge HOWELL not participating. We granted *certiorari* and able argument has been heard.

We consider, first, the effect of the limitation of liability of the sureties on the bond as stated in the bill, to which liability the answer is directed and the decree of reference of the Chancellor to the Master is confined. The fundamental question whether or not the final decree of the Chancellor is within the scope of the pleadings is not discussed, either in the opinion of the Chancellor or in that of the Court of Appeals. The petition stresses, first, the express limitation in the allegation in the original bill of liability of the surety on the bond sued to such sums as had been collected by the Agency and not remitted to complainant, the insistence of petitioner being, first, that (1) the language of the bond supports the insistence that liability of the surety is thus limited, and (2) that if the terms of the bond are not clearly so limited, the language is so ambiguous as to call for application of the well-settled rule that when the contract has been prepared by one party, the other is entitled to the benefit of the doubt, and (3) that the bill having recognized and been based upon this limited liability construction, the complainant "is judicially estopped to take any other position." It is to this latter question that the supplemental brief of counsel for complainant is chiefly directed, *Sartain* v. *Dixie Coal & Iron Co.*, 150 Tenn., 633, 266 S. W., 313, being cited to sustain the contention that judicial estoppel is not applicable, no oath in the course of judicial proceedings being here involved. We agree that the strict rule of judicial estoppel does not apply, the difficulty here arising being the apparent lack of pleading to sustain the decree. In discussing the rule that pleading is essential, this Court, in *Caldwell* v. *Huffstutter et al.*, 173 Tenn., 225, at page 229, 116 S. W. (2d), 1017, 1019, presented this query, pertinent here: "Can the relief decreed by the Court of Appeals in the instant case be said to be

'agreeable to the case made by the bill?' Is it 'not different from it?' And is it not 'beyond the scope of the complainant's bill?' "

The supplemental brief of counsel for complainant relies upon *Dodd* v. *Benthal*, 51 Tenn., 601, to sustain the insistence that the allegations of the bill in the instant case are broad enough to support the decree of the Chancellor extending the liability of the surety beyond such sums as have been collected and not remitted. In *Caldwell* v. *Huffstutter, supra*, we discussed and distinguished *Dodd* v. *Benthal*, and said that, "while the opinion in that case emphasized the power of Courts of equity to grant relief liberally under the general prayer, where the facts are set forth and the equities so demand," it was said in that case that a cardinal rule is that the " 'relief must be agreeable to the case made by the bill, and not different from it;' and, again, 'The court will not grant relief which is without the scope of the complainant's bill.' " No rule is better settled than that both allegations and proof are essential to a decree or judgment and that there can be no valid decree unless the matter on which the decree is rested is plainly within the scope of the pleadings. Shannon's Tennessee Annotations, under *Allen* v. *Howard & Nanny*, 3 Shannon Cas., 92, cites two solid pages of citations of Tennessee cases to sustain this general rule. In the notes under Section 6124 of Shannon's Code, which provides that the bill shall contain a clear statement of the facts on which the suit is founded, numerous cases are cited to sustain the proposition that no relief can be granted upon any matter or theory which does not distinctly appear in either the bill or answer. A leading case is *Bank* v. *Carpenter*, 97 Tenn., 437, 37 S. W., 278, holding, as well expressed in the headnote, that "A decree is *coram non judice* and void which, under a bill

seeking to attach a specific debt or property, subjects to complainant's claim other assets of his debtor not described or sought to be subjected by the bill.''

*Randolph & Jenks* v. *Merchants National Bank of Memphis et al.*, 77 Tenn., 63, is another case in which a decree of the Chancellor, which extended liability beyond items not specified in the bill, was held void. In that case it was said: ''It is an elementary principle that the courts can only act upon such matters as are properly brought before them by the parties, according to the settled law, practice and usage: *Windsor* v. *McVeigh*, 93 U. S. [274], 282 [23 L. Ed., 914]. The court can not rightfully notice matter, however clearly proved, of which there is no allegation or issue in the pleadings: *Sheratz* v. *Nicodemus*, 7 Yerg. [9], 13; *Bedford* v. *Williams*, 5 Cold. [202,] 207.; *Furman* v. *North*, 4 Baxt., 296; *Austin* v. *Ramsey*, 3 Tenn. Ch., 118. No relief can properly be granted in chancery upon any matter which does not appear either in the bill or the answer: *Rogers* v. *Breen*, 9 Heisk., 679.''

The following expression in the opinion of Mr. Justice BEARD in *Thompson* v. *Keck Mfg. Co.*, 107 Tenn., 451, page 453, 64 S. W., 709, appears to be directly applicable in the instant case: ''The mere comparison of the decree with the pleadings of itself demonstrates that it is *coram non judice*.''

. Discussing the general rule, to which we have referred, it is said in 19 Am. Jur., at p. 281, that, ''the relief decreed must not be essentially different from that prayed for or sought in the bill.''

. And, finally, upon this particular proposition, 15 R. C. L., at p. 604, thus expresses the rule: ''In order to give a judgment the merit and finality of an adjudication between the parties, it must be responsive not only to the

proofs but to the issues tendered by the pleadings, because pleadings are the very foundation of judgments and decrees. A judgment will be void which is a departure from the pleadings, and based upon a case not averred therein, since if allowed to stand it would be altogether arbitrary and unjust and conclude a point upon which the parties had not been heard. . . . Therefore the rule is firmly established that irrespective of what may be proved a court cannot decree to any plaintiff more than he claims in his bill or other pleadings.''

■ We are unable to escape the conclusion that the decree of the Chancellor, affirmed by the Court of Appeals, adjudges a liability not alleged and awards relief not sought in the original bill, but extends liability to a fundamentally different character of obligation from that stated in the bill, responded to in the answer, and thus clearly made the controlling issue in the case, so recognized by the Chancellor in his decree of reference to the Master, to which theory of liability the report of the Master was directed and confined, and the exceptions to this report filed by counsel for the complainant were directed.

As elsewhere shown, the bill sought a decree only for monies which had been collected or received by the Agency for the account of complainant, whereas the decree entered is for an aggregate of premiums on insurance written for complainant and other accounts which the Agency was unable to collect. ''The exact items which went to make up this amount,'' as found by the Court of Appeals, ''were not shown;'' nor is the nature of any obligation of the Agency with respect thereto established by exhibition of the agency contract between the parties.

464

■ Also, another kindred and analogous rule would seem to be applicable, thus stated in the opinion in *Stamper* v. *Venable,* 117 Tenn., 557, 97 S. W., 812, 813; ''It may accordingly be laid down as a broad proposition that one, without mistake induced by the opposite party, who has taken a particular position deliberately, in the course of litigation, must act consistently with it. One cannot play fast and loose.''

Moreover, upon a careful analysis of the language of the bond, we are of opinion that, while the language employed is involved, the purpose appears to have been to secure (1) remittance to the complainant of all monies collected by the Agency belonging to the complainant and (2) delivery to the complainant of all uncollected accounts, notes and other property of the complainant. We quote from the bond its obligatory provisions, breaking it down into paragraphs for better analysis:

. ''The condition of the above Obligation is such, that if the above bounden Jackson Insurance Agency, Incorporated, as agent of said Company,

''(1) shall faithfully and punctually pay over and/or deliver to the said Company, or to its authorized and designated agents, attorneys or assigns, all amounts due or that may become due to it, from time to time, for moneys collected or received by them for premiums on policies of insurance or renewals thereof, and/or [for] balances of accounts, and/or notes, and for all other amounts whatsoever that may be due and payable to the Company under the terms of the agency contract [which may be received by them], and

''(2) shall faithfully account for all property and/or notes coming into his possession or under his control, belonging to said Company or in which said Company is interested, and

"(3) shall do and perform the several obligations and duties herein or otherwise imposed upon him, and each and all of them, at such times and in such manner as may from time to time be directed and required by said Company, and

"(4) shall pay to and liquidate with said Company, or its authorized and designated agents, attorneys or assigns, any and all advances of money made or claims and demands due or owing at any time by him to said Company, and

"(5) shall keep and perform all contracts made with, and obligations to said Company or in any wise relating to or growing out of his connection therewith, and

"(6) shall with fidelity do and perform the duties assigned to him as the agent of said Company according to the best of his ability and in accordance with the instructions contained in his commission and the printed book of instructions of the Company and that may from time to time be communicated to him by the said Fidelity-Phenix Fire Insurance Company or any officer or representative thereof, and

"(7) shall at the termination or revocation of his agency promptly surrender and deliver to said Company or its accredited representative all books of record, supplies and other property belonging to said Company, then this obligation to be void, otherwise to remain in full force and virtue."

It will be seen that the bond first provides, as its apparently primary objective, that if the Agency shall "pay over and/or deliver to the said Company, . . . all amounts due or that may become due to it, from time to time, for moneys *collected or received by them for premiums on policies of insurance or renewals thereof,* and/or [for] balances of accounts, and/or notes," and,

secondly, "shall faithfully account for *all property and/or notes* coming into his possession or under his control, belonging to said Company, or in which said Company is interested," etc., and, finally, "shall at the termination or revocation of his Agency promptly surrender and deliver to said Company, or its accredited representative, all books of record, supplies and other property belonging to said.Company, then this obligation to be void," etc.

In other words, the intention of the bond was to obligate the sureties (1) to the payment over of all monies collected and (2) the delivery to the company of all uncollected notes and accounts and all other properties of the company. There is no insistence made that there was any failure or refusal to comply with this secondary obligation. And, as before shown, the bill alleged liability only for such sums as had been collected by the Agency belonging to the complainant which had not been paid over.

It is true that the bond contains recitals calling in general terms for the performance of "all contracts made with, and obligations to said Company . . . . in accordance with the instructions contained in his commission . . . and that may from time to time be communicated to him," but we think it fair and reasonable to construe these general recitals as elaborations of the purpose set forth in the foregoing portion of the bond. Moreover, there is no charge that the Agency violated any instructions or failed to perform faithfully any duties imposed "according to the best of his ability."

██ Again, another well-settled rule comes into play, that of "practical construction." It is well settled that the interpretation of a contract by the parties themselves will be adopted by the Court. See 3 Williston on Contracts, Par. 623, citing many authorities, including *State*

*ex rel. College of Bishops of M. E. Church, South,* v. *Board of Trust of Vanderbilt University,* 129 Tenn., 279, 164 S. W., 1151. Also, *Canton Cotton Mills* v. *Overall Co.,* 149 Tenn., 18, at page 29, 257 S. W., 398, and *City of Chicago* v. *Sheldon,* 9 Wall., 50, 19 L. Ed., 594, and *Yowell* v. *Union Cent. Life Insurance Co.,* 141 Tenn., 70, 206 S. W., 334, 340. We have here quite evidently and plainly a construction by both parties to this contract contained in the pleadings. It is true that this rule of practical construction is recognized as applying to cases only "where the language used by the parties to the contract is indefinite or ambiguous, and hence of doubtful construction," as expressed in *City of Chicago* v. *Sheldon, supra,* quoted from in *Yowell* v. *Union Cent. Life Insurance Co., supra.*

Nor are we able to escape the conclusion that this contract of suretyship is ambiguous, even if the construction which we have heretofore suggested should be questioned. That it is ambiguous we think appears from the fact that the able solicitors for the complainant, who prepared the original bill, and the Chancellor, who originally considered and decreed a reference in the case, gave the contract one construction, while a succeeding Chancellor and the Court of Appeals have given it another. There could hardly be a stronger indication of doubtfulness and ambiguity. And, as previously stated, this Court finds the language to be involved and difficult of definite construction, and it may be added that the learned Chancellor who pronounced the final decree stated that, "The Court approached the determination of this cause with the inclination to limit the liability of Mrs. Jackson, the surety on the aforesaid bond, to the net amount owing complainant by reason of premiums collected and unaccounted for." But the Chancellor goes on to say that,

"After careful consideration," he has reached the conclusion that it should be given a broader construction and extended to amounts payable to the company, although not collected.

█ An applicable governing rule of construction is thus well expressed on the brief of counsel for the complainant: "The Court, placing itself in the position of the contracting parties, considers all the facts and circumstances so as to ascertain what the parties intended, the primary purpose being to ascertain just what was within the contemplation of the parties."

Looking to the circumstances of the execution of this bond, we do not think it reasonable to assume that Mr. and Mrs. Jackson contemplated assuming a liability so broad as that adjudged by the decree of the Chancellor. If these sureties had in mind entering into this unlimited obligation, then the creation of a corporate agency was unnecessary. This broad and unlimited liability is only that which they would have assumed if they had entered into a partnership relationship with their son, R. F. Jackson, Jr., in the conduct of this business.

██ It is a matter of common knowledge that bonds executed under the circumstances of the instant case are usually limited in obligation to the proper accounting for all monies coming to the hands of the principal on the bond. In other words, they are limited to that distinctive character of obligation which comes within the general definition of defalcation. Certainly, if it was the intention of the complainant Insurance Company, in drafting this bond, to bind the sureties thereon not only to make good any default in accounting for monies coming into the hands of the Agency and in delivery of all choses in action and other assets of complainant, a default which carries with it moral stigma and criminal liability,

but also to exact from these sureties payment of all claims arising in the conduct of the Agency which have proven to be uncollectible because of insolvency or otherwise, then this additional and fundamentally different obligation should have been set forth more plainly.

We think it unnecessary to extend further this opinion. We are persuaded, in the first place, that the decree of the learned Chancellor, affirmed by the Court of Appeals, is not within the distinctly set forth claim of liability alleged and relied on in the original bill, but has been extended to a fundamentally different ground and scope of liability, and that the decree, for this reason, cannot be sustained. And, in the second place, we are satisfied that the bond is ambiguous and indefinite in its meaning and, therefore, must be given the construction favorable to the defendant surety, under the well-known rule that applies when the contract has been prepared wholly by the other party. *Stovall* v. *New York Indemnity Co.*, 157 Tenn., 301, 8 S. W. (2d), 473, 72 A. L. R., 1368; *Laue* v. *Grand Fraternity*, 132 Tenn., 235, 247, 177 S. W., 941, L. R. A., 1915F, 1056, Ann. Cas. 1917A, 376; *Pacific Mutual Life Ins. Co.* v. *Galbraith*, 115 Tenn., 471, 91 S. W., 204, 112 Am. St. Rep., 862.

The decree of the Court of Appeals will be modified. so as to limit the recovery to the sum of $518.62 reported by the Master as collected and not remitted by the Agency, which report was not excepted to by the defendant and was affirmed by the Chancellor. Thus modified the decree of the Court of Appeals is affirmed.