C. B. ROMANO, J. R. Maynard, partners doing business under the firm name of Tennessee Building Specialties Company

v.

J. W. BATESON COMPANY, Inc., Seaboard Surety Company, Employers Reinsurance Corporation, American Casualty Company of Reading, Pennsylvania, and U. S. Fidelity & Guaranty Company (Chattanooga Housing Authority, Third-Party Defendant).

Civ. A. No. 2827.

United States District Court
E. D. Tennessee, S. D

June 4, 1958.

Kolwyck & Clark, Chattanooga, Tenn., for Romano et al.

Miller, Martin, Hitching & Tipton, Chattanooga, Tenn., for J. W. Bateson Co. et al.

Whitaker, Hall & Haynes, Chattanooga, Tenn., for U. S. Fidelity & Guaranty Co.

Wilkerson, Meacham & Abshire, Chattanooga, Tenn., for Chattanooga Housing Authority.

DARR, Chief Judge.

This civil action was brought by C. B. Romano and J. R. Maynard, partners, doing business as Tennessee Building Specialties Company (who will be hereafter called "Romano"), against J. W. Bateson Company, Inc., and its bonding companies on the contract in question (hereinafter called "Bateson"). The United States Fidelity & Guaranty Company (called "U.S.F. & G."), the bonding

company for Romano, was joined as a defendant, and claims a portion—perhaps all—of the recovery to cover its loss as a result of the failure of Romano to complete the job. Bateson filed a third-party complaint against the Chattanooga Housing Authority and a counterclaim against Romano.

The Housing Authority had contracted with Bateson to build Low-Rent Housing Project No. Tennessee 4–6 in Chattanooga, Tennessee. Bateson then contracted with Romano to do the grading work. The Housing Authority specifically disapproved Romano as a subcontractor. A portion of the land within the limits of the project consisted of rocks and dirt placed there during or at the close of work on an adjacent project completed before No. Tennessee 4–6. This was known as the "spoil pile" or "spoil area". The only claim made by Romano which was supported by substantial evidence was the claim for extra pay for removing of this spoil area and bringing in outside dirt to make up the loss.

The Court, in an oral opinion handed down at the close of the trial, allowed Romano to recover for the removal of the "spoil pile", and denied the right of Bateson to recover from the Housing Authority for the removal of the same "spoil pile".

Bateson has filed a motion for a new trial or for a judgment in its favor either as to its liability to Romano, or as to the Housing Authority's liability to it if it is liable to Romano.

■ At the close of the examination of Mr. John A. Wacker, on the second day of trial of this case, Mr. Tipton, counsel for Bateson, offered into evidence the depositions of Mr. J. W. Bateson, Mr. Maynard, and Mr. Romano, which depositions were all filed but were not read to the Court or used in the trial of the case. Mr. Tipton, in his brief on the motion now before the Court, quotes freely from the Romano deposition, apparently on the assumption that a deposition on file but not read in evidence is properly before the Court in an oral trial. Since the witness appeared and testified at the trial such an assumption is erroneous. The quotations from that deposition can be considered only as affecting the credibility of the witness, and not as positive testimony.

■ The testimony at the trial was not clear and unequivocal. Bateson, apparently uncertain as to exactly what would be required by the Housing Authority, tended to be indefinite in its statements to and negotiations with Romano. It is very clear, however, that Bateson was of the opinion that the specifications did not require the removal of the spoil area, and so told Romano when Romano declined to go ahead with that portion of the work without express orders after a price (per yard) was quoted by Romano. Bateson insists that such an opinion, expressed in negotiations, did not constitute an interpretation of the contract, since Bateson at all times took the position that Romano had to do whatever was required by the contractor.

Had Romano not asked Bateson for such interpretation of the contract, or had Romano not relied on the interpretation, and had Bateson clearly pointed out to Romano that its opinion as to what would be required of Romano was not binding on Bateson, a contrary result might be possible. But to require a party to a contract to disregard the representations of the other contracting party as to the meaning of the instrument is too heavy a burden. It is important to remember, here, that Romano not only did not contract with the Housing Authority, but was not acceptable as a subcontractor, and could not be bound by the Housing Authority's contract with Bateson except where it was clearly incorporated in the Bateson-Romano contract, and so interpreted by Bateson in his contacts with Romano. The evidence reflects that Romano clearly understood that he would *not* be required to remove the "spoil pile", and Bateson encouraged that understanding.

"In cases where the language used by the parties to a contract is indefinite or ambiguous, and hence of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence." City of Chicago v. Shelton, 9 Wall 50, 19 L.Ed. 594, as cited in Yowell v. Union Central Life Ins. Co., 141 Tenn. 70, 206 S.W. 334; also State ex rel. College of Bishops, etc. v. Vanderbilt University, 129 Tenn. 279, 164 S.W. 1151. "It is well settled that the interpretation of a contract by the parties themselves will be adopted by the Court." Fidelity-Phenix Fire Ins. Co. v. Jackson, 181 Tenn. 453, at page 466, 181 S.W.2d 625, 631. The Romano-Bateson contract was indefinite and ambiguous, and both parties construed it as *not* covering the "spoil pile". The Bateson-Housing Authority contract was also ambiguous, but the Housing Authority never concurred in the interpretation given the contract by Bateson. The requirements of the specifications that fills be compacted in layers no thicker than six inches made it necessary that the "spoil pile" be removed, and that the removal not be paid for as an extra. The fact that Romano was not an approved subcontractor, although it affects the equities in the case, is not necessary to this determination.

The testimony as to the yardage in the spoil pile was disputed, as was the testimony as to the per yard cost of removal and replacement. The Court accepted the actual measurement of the yardage removed, rather than the estimates. There was a tremendous variation between the plaintiff's and the defendant's testimony as to a proper allowance for the performance of this work, and the Court does not feel it necessary to accept either figure as correct.

The motion for a new trial and to amend judgment is denied. It should be pointed out that the motion is incorrect when it states that the Court set the price for removing spoil materials at $1.20 and for refilling at $1.20. The figure $2.40 included both removal and refilling, and was not broken down between the two.

Actually the notations made in the civil docket, as provided by Rule 79(a), 28 U.S.C.A., which constitute the entry of the judgment, were entered February 28, 1958, and the motion for a new trial was not filed until March 31, 1958, which may be too late. See Rule 58, Federal Rules of Civil Procedure. The entry in the civil docket made in this case, which is a part of the record, is easily distinguished from the case of United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed.2d 721. However, the Court has determined the questions raised by the motion as hereinbefore detailed.

This opinion (and the oral opinion) will constitute the findings of fact and conclusions of law in this case.

Order accordingly.