# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### NOVEMBER 20, 2000 Session

## JOHN BRITT, ET AL. v. JOHNNY MASSENGILL, ET AL.

### Direct Appeal from the Chancery Court for Henderson County
### No. 10971; The Honorable Joe C. Morris, Chancellor

---

### No. W1999-01129-COA-R3-CV - Filed February 26, 2001

---

This is a suit arising from the Appellants' purchase of real property from the Appellees. The Appellees executed a warranty deed to the Appellants. The Appellants claim that the Appellees failed to disclose that the property was subject to a timber contract. The Appellants filed a complaint against the Appellees in the Chancery Court of Henderson County, requesting damages for violation of the Tennessee Consumer Protection Act. The trial court ordered rescission of the contract for the sale of real property.

The Appellants appeal the order of the Chancery Court of Henderson County, ordering rescission of the contract for the sale of real property. For the reasons stated herein, we reverse the trial court's decision.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert T. Keeton, III, for Appellants

No filing on behalf of Appellees

## OPINION

### I. Facts and Procedural History

On June 18, 1996, the Appellants, John and Jimmie Britt ("the Britts"), entered into a sales agreement with the Appellees, Johnny and Dolores Massengill ("the Massengills"), for the purchase of approximately seven acres of real property located in Henderson County, Tennessee. Mr. Massengill, owner of People's Real Estate and a licensed affiliate broker, signed the sales agreement

as the selling and listing agent. On July 18, 1996, the Massengills executed a warranty deed to the Britts in exchange for $6,300.00. The Massengills warranted that they were lawfully seized and possessed of the property in fee simple, that they had a good right to convey it, and that the property was unencumbered.

The Britts claimed that timbering operations began on the property shortly after the purchase. The Massengills had entered into a timber contract with Packaging Corporation of America ("PCA") on September 11, 1995 to sell all marketable timber on the property. Mr. Massengill claimed that he orally told the Britts that he had a contract with PCA. Mr. Massengill also asserted that PCA had already placed their equipment on the property when the Britts first looked at the property. The Britts stated that the Massengills never told them about the timber contract and that there was no equipment on the property prior to the sale. The Britts claimed that they would not have purchased the property had they known the timber was to be cut.

The Britts stated that Bob Powers ("Mr. Powers") was present when they went with Mr. Massengill to look at the property. Mr. Powers stated, however, that he did not remember going with the Britts and Mr. Massengill to look at the property. Mona Tate ("Ms. Tate") stated that she went with the Britts and Mr. Massengill to look at the property. She claimed that Mr. Massengill told the Britts that the timber was to be cut. Ms. Britt denied that Ms. Tate looked at the property with them and that Mr. Massengill told them that the timber was to be cut.

The warranty deed did not reflect that the Massengills had sold all marketable timber to PCA. Likewise, the original sales agreement did not reflect that the Massengills had sold all marketable timber to PCA. Mr. Massengill admitted that he altered the sales agreement after the closing to reflect that the Massengills had sold all marketable timber to PCA. Mr. Massengill also admitted that he altered the sales agreement to add the name of Clara Scott as the selling agent. Mr. Powers stated that nothing is supposed to be altered after the closing without the parties' knowledge. Ms. Tate stated that it is uncommon to alter documents after the closing.

On December 10, 1996, the Britts filed a complaint against the Massengills in the Chancery Court of Henderson County.[1] In their complaint, the Britts requested damages, costs, and attorney's fees for violation of the Tennessee Consumer Protection Act. The trial court held the hearing on November 5, 1998. Michael Stanford ("Mr. Stanford"), owner and manager of a forestry consultant firm, testified that the timber on the property had a market value of $3,430.00 prior to its removal. He further testified that the cost to reforest the acreage was $1,100.00. Mr. Massengill testified that the value of the property had increased from the price the Britts paid for the property.

At the close of the hearing, the trial court found that there had been a mutual mistake between the parties. The trial court ordered that the contract for the sale of real property be rescinded, that

---

[1] The Britts also named Mr. Powers as a defendant in the complaint. The Britts later moved to take a voluntary non-suit against Mr. Powers, and the trial court granted the motion.

Mr. Massengill make restitution to the Britts for the purchase price plus any applicable interest, and that the Britts deed the property back to Mr. Massengill. This appeal followed.

## II. Standard of Review

In this non-jury case, our review is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact unless the preponderance of the evidence is otherwise. See TENN. R. APP. P. 13(d). No presumption of correctness attaches to the lower court's conclusions of law. See Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

## III. Law and Analysis

The sole issue presented for our review is whether the trial court erred in ordering rescission of the contract for the sale of real property when the complaint and the proof addressed damages as a result of the sale under the Tennessee Consumer Protection Act. We agree that the trial court erred in ordering rescission of the contract based on the grounds of mutual mistake when that issue was neither pled nor proved at trial.

It is a fundamental rule of law that in order to receive relief, a party must plead, request, and prove the relief with the opposing party having the opportunity to offer proof opposing the requested relief. Rule 54.03 of the Tennessee Rules of Civil Procedure states:

> A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings; but the court shall not give the successful party relief, though such party may be entitled to it, where the propriety of such relief was not litigated and the opposing party had no opportunity to assert defenses to such relief.

TENN. R. CIV. P. 54.03.

In addressing the necessity for matters to be alleged in the pleadings and supported by evidence before they can be adjudicated by the chancery court, Gibson's Suits in Chancery states:

> A Court of Chancery has no jurisdiction of any matter not submitted to it in a pleading for adjudication; nor can the defendant be called on to respond to anything not alleged against him. Neither can a Court consider any evidence which does not directly, or indirectly, tend to prove or disprove the allegations contained in the pleadings. A decree

-3-

can neither be based on allegations without corresponding proof, nor on proof without corresponding allegations. All decrees must be the concurring result of allegations justified by proof, and proof justified by allegations. A decree based on pleadings without proof, will be reversed on appeal, but will be good against collateral attack. A decree based on proof, without pleadings, will not only be reversed on appeal, but will also yield to a collateral attack because such a decree is *coram non judice*, and absolutely void. The jurisdiction of the Court is circumscribed by the pleadings, and the pleadings are circumscribed by the Law.

Gibson's Suits in Chancery § 218 (7th ed. 1988).

This fundamental rule of law has been upheld by the courts of Tennessee. In the case of Cardwell v. Hackett, 579 S.W.2d 186 (Tenn. Ct. App. 1978), the plaintiff sued the defendant for implied warranty of a mobile home purchased by the plaintiff from the defendant. The trial court rendered a judgment for the return of the purchase price of the mobile home to the plaintiff and a return of the mobile home to the defendant. In reversing the judgment on appeal, this Court said, "Thus, his judgment is a rescission of the contract and an effort to restore the parties to status quo. It seems to us that this is error . . . because the pleadings do not encompass a suit for rescission." Id. at 191.

In the case of Fidelity-Phenix Fire Ins. Co. of New York v. Jackson, et al., 181 S.W.2d 625 (Tenn. 1944), our Supreme Court stated, "No rule is better settled than that both allegations and proof are essential to a decree or judgment and that there can be no valid decree unless the matter on which the decree is rested is plainly within the scope of the pleadings." Id. at 629. The court also noted with approval:

> In order to give a judgment the merit and finality of an adjudication between the parties, it must be responsive not only to the proof but to the issues tendered by the pleadings, because pleadings are the very foundation of judgments and decrees. A judgment will be void which is a departure from the pleadings, and based upon a case not averred therein, since if allowed to stand it would be altogether arbitrary and unjust and conclude a point upon which the parties had not been heard . . . . Therefore, the rule is firmly established that irrespective of what may be proved a court cannot decree to any plaintiff more than he claims in his bill or other pleadings.

Id. (citation and internal quotations omitted).

The relief requested by the Britts in their pleadings was based upon a violation of the Tennessee Consumer Protection Act. The Britts did not request or offer evidence in support of

mutual mistake or rescission of the contract, nor were the Massengills given an opportunity to respond to such relief. In addition to a request for damages, costs, and attorney's fees, the Britts made a prayer for general relief in their pleadings. While courts of equity have the power to grant relief liberally under the general prayer for relief, there are well recognized limitations which courts may not overlook. See Caldwell v. Huffstutter, 116 S.W.2d 1017, 1019 (Tenn. 1938). "The relief granted must be clearly within the scope of the bill, and it must not be either antagonistic to, or altogether different from, that specifically prayed for." Id. The trial court's judgment held that there was a mutual mistake between the parties and ordered the contract rescinded on those grounds. The relief granted was not within the scope of the pleadings or the proof. Under the state of the record before us, the relief granted should have been confined to the relief sought in the pleadings. Accordingly, the trial court's decision on this issue is reversed.

## IV. Conclusion

For the foregoing reasons, the decision of the trial court is reversed. We remand for a determination of the issues raised in the pleadings and proof in accordance with this opinion. Costs of this appeal are taxed against the Appellees, Johnny and Dolores Massengill, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE