IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2001 Session

## JO ANNE HOFMEISTER v. JOHN DANIEL HOFMEISTER

**Appeal from the Circuit Court for Davidson County**
**No. 93D-3422      Marietta M. Shipley, Judge**

_____

**No. M2000-00363-COA-R3-CV - Filed December 10, 2001**

_____

A series of post-divorce petitions resulted in a hearing on July 22, 1999 in which no witnesses were called nor any sworn testimony offered. Based on the petitions, the answers, and the statements of counsel, the court modified the final decree of divorce with respect to the husband's obligations to pay the wife's medical insurance premiums, medical expenses, and life insurance premiums. The court also denied the wife's petition for post-judgment interest on a payment to the wife that had been ordered in the final decree. The wife appeals on the grounds that (1) there were no pleadings or proof justifying the amendments and (2) the court erred in not granting her petitions. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Robert A. Anderson, Nashville, Tennessee, for the appellant, Jo Anne Hofmeister.

John J. Hollins, Nashville, Tennessee, for the appellee, John Daniel Hofmeister.

**OPINION**

**I.**

The court proceedings surrounding this action are quite convoluted and complicated by the fact that the wife has had five different attorneys during the divorce and post-divorce proceedings. In addition, the parties did not appear in court for most, if not all, of the hearings. Since the divorce, wife has established residency in Virginia, and the husband has lived many places including England and Hong Kong.

The parties were married on March 7, 1977 and divorced on March 6, 1995. There were no minor children at the time of the divorce. In the divorce decree, the trial court stated that, "[Mrs. Hofmeister's] health will continue to be a real issue, whether it be her mental or physical health." The decree then went on to address the issue of health insurance:

**Hospitalization and Health Insurance -**

Mr. Hofmeister shall make arrangements so that Ms. Hofmeister can be maintained on his major medical and hospitalization insurance until her death or remarriage or until she has another plan available to her. The deductible, for which she is responsible will be no more than $500.00. He shall be responsible for the premiums.

**Life Insurance** - Mr. Hofmeister shall carry life insurance with Ms. Hofmeister as beneficiary in the amount of $500,00[0], so long as he is responsible for alimony payments.

While the decree was still within the court's jurisdiction, the trial court modified the divorce decree with an order filed on May 2, 1995. The order stated:

The Husband shall be responsible for providing health insurance for the Wife. The Wife's deductible shall not exceed $500 under the Husband's health care plan. The Wife shall follow the Allied Signal insurance plan by seeking treatment through health care providers associated with the Allied Signal plan. In the event the Wife incurs medical expenses outside Allied Signal's medical plan, she shall be responsible for their payment. In addition, the Wife shall be responsible for any medical expenses not covered by the Husband's medical plan after May 31, 1995.

Over the next four years the wife filed two petitions for contempt and an amended petition. For some reason the petitions were never heard by the trial court. The husband answered the first two petitions, and then in June of 1999, he answered the amended petition and filed a counter-claim for contempt. On July 22, 1999, the lawyers appeared in the trial court for a "hearing" on the various pleadings. On September 1, 1999, the court entered an order with the following pertinent provisions:

1.    John D. Hofmeister will keep in force State Farm Life Insurance Policy #LF-0779-6156 in the amount of $300,000 naming his ex-wife, Joanne Hofmeister Davis as the beneficiary. This policy will remain in force and retain Ms. Davis as the beneficiary so long as there is an obligation for Mr. Hofmeister to pay alimony to Ms. Davis.

2.    John D. Hofmeister will keep in force Accidental Life Dismemberment Group Insurance Policy #UAMP178405930 in the amount of $100,000 naming his ex-wife, Joanne Hofmeister Davis as the beneficiary. This policy

will remain in force and retain Ms. Davis as the beneficiary so long as there is an obligation for Mr. Hofmeister to pay alimony to Ms. Davis.

3.      Mr. Hofmeister currently has a bank account in the amount of $100,000 located in Western Federal Credit Union in the State of California Account # 178405930. Ms. Davis will be allowed to draw on that account in her name in the event of the death of Mr. Hofmeister prior to the expiration of Mr. Hofmeister's obligation to pay alimony to Ms. Davis. The balance of $100,000 is to remain at $100,000 so long as the obligation to pay alimony by Mr. Hofmeister to Ms. Davis continues. The bank account is for Ms. Davis' specific benefit and Mr. Hofmeister's obligation to maintain the bank account and Ms. Davis' access to the bank account will continue so long as Mr. Hofmeister's obligation to pay alimony to Ms. Davis.

. . . .

6.      Mr. Hofmeister currently has in his possession funds in an escrow account, which are his good faith funds, escrowed for the benefit of insurance for Ms. Davis. Mr. Hofmeister is ordered to transfer that entire balance to Ms. Davis within ten (10) days of the date of entry of this order.

7.      Mr. Hofmeister is ordered to pay $300 per month to Joanne Davis to help defray the expense of her medical insurance. This $300 per month is retroactive to the date upon which Joanne Davis first purchased her own insurance, which was April 1998. The past due payments shall be paid to Ms. Davis within thirty (30) days of the date of entry of this order.

8.      Mr. Hofmeister is ordered to pay all medical expenses including hospitalization and doctor visits incurred by Ms. Davis while she was without insurance from March 31, 1998 to April 28, 1998. This will also be done within thirty (30) days of the date of entry of this order.

The wife filed a Motion to Alter or Amend this order, which the trial court denied on January 19, 2000. On December 12, 2000, the court entered an order awarding attorneys' fees to the wife.

**II.**

Wife presents four issues in this appeal: (1) the trial court erred when it modified the terms of the final decree of divorce without either a pleading before it seeking a modification or any showing of a material change of circumstance to justify a modification; (2) the trial court erred by failing to grant a judgment against husband for the health insurance premiums she incurred before and after her COBRA benefits expired; (3) the trial court erred by ordering that husband pay for medical expenses not covered by insurance from March 31 to April 28, 1998 without a hearing and

-3-

despite the preponderance of the evidence that husband had violated the prior orders of the court; and (4) the trial court erred by failing to grant post-judgment interest against husband for failing to give wife a check for $700 as ordered under the final decree.

The husband does not address directly the issues presented by the wife. Instead he asserts that the trial court's judgment should be affirmed because the wife: (1) failed to file a complete transcript of the evidence or statement of the evidence in violation of Tenn. R. App. P. 24 and (2) failed to file a complete transcript or statement of the evidence which contains timely evidentiary objections and/or offers of proof made by the wife's attorneys in the trial court.

We will discuss the first three of the wife's issues along with the husband's issues because they present opposite sides of the same coin. We gather from the record that after the divorce the parties both moved out of this state and that fact complicated the husband's ability to follow some of the provisions of the divorce decree. Thus, the wife filed petitions for contempt on October 29, 1997 and February 23, 1998. The husband answered the petitions on July 28, 1998. On December 21, 1998, the court entered the following order:

> A status conference was held in this case on November 11, 1998 before the Honorable Marietta Shipley, Judge of the Second Circuit Court of Davidson County, Tennessee. At the conclusion of the status conference the Court ordered as follows:
>
> Husband is to obtain a copy of the health insurance policy Wife had prior to it's [sic] termination in April 1998. Wife is to obtain a copy of the insurance policy she now has in place. These policies will be exchanged between the attorney's [sic] for the parties. Wife is to determine what insurance claims have been filed but not paid under the insurance provided to Wife through the cobra plan as ordered by the Court.
>
> Wife is to amend her petition to include the G.E. Stock issue.
>
> Husband will have the option of obtaining the ordered $500,000 life insurance policy naming Wife as the beneficiary or provide for the payment of alimony through his estate and have a lien placed on his real property in Pennsylvania.
>
> Wife's attorney of record is to submit an affidavit of attorney's fees to Husband's attorney of record.
>
> The Court orders the hearing of Wife's petition continued indefinitely until the lawyer's collect and share the needed documentation and information. Since Husband is in Europe and Wife is in the State of Virginia the Court is considering having the parties testify, if need be, by telephone in this matter.
>
> All other matters are reserved.

All of which is so ordered.

On May 20, 1999, the wife filed an amended petition for civil contempt. The husband filed an answer and counterclaim for contempt on June 2, 1999. The basis for the counterclaim was the wife's failure to comply with the December 21, 1998 order requiring her to produce a copy of her health insurance policy. The wife answered the counterclaim and stated that the policy has been produced and forwarded to husband's counsel.

Thus the stage was set for the "hearing" on July 22, 1999. We think the record shows that the trial court did hear proof at that hearing. The order following that hearing, drafted by the wife's attorney, states, "Based upon the proof before the court and the statement of counsel, the court orders as follows:" (Emphasis supplied). Shedding further light on what occurred at that hearing the court said on November 5, 1999:

> This has been one of the most frustrating cases that I have ever seen. It just never seems to go away. The information that was given, I presume, is what's in the order because I didn't have a hearing on this. There was information that was just presented by attorneys, it was pretty much a decree[1] order. We tried to work it out because nothing that was in the original order is the same anymore.

> She moved, she had a perfectly good insurance policy here. She could not pick that up in the State of Virginia. She didn't communicate with anybody as to how it was going to be done. So since none of those things were true at the time of the final decree, we're trying to figure out something that protects her as much as possible, and it seems to me she keeps wanting things that are not possible to give her.

Therefore, the court did receive proof on July 22, 1999, although not in the usual form. Apparently the lawyers appeared without their clients and simply stated what had happened since the final decree. The September 1, 1999, order resulted from that proceeding.

With respect to the wife's complaint on appeal that there were no pleadings seeking a modification of the final decree, that assertion is true; and in a time when the law laid greater stress on formal pleadings, the lack of a pleading would have been fatal. *See Fidelity-Phenix Fire Ins. Co. of New York v. Jackson*, 181 S.W.2d 625 (Tenn. 1944). Today, however, Rule 54.03, Tenn. R. Civ. P. provides "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." In addition, Rule 15.02, Tenn. R. Civ.

---

[1] We think the transcript contains an error here and the word "decree" should be "agreed." However, since a party cannot appeal from an agreed order, *Clinchfield Stone Co. v. Stone*, 254 S.W.2d 8 (Tenn. Ct. App. 1952), we will give the wife the benefit of the doubt.

P. provides that issues tried by express or implied consent shall be treated in all respects as if they had been raised in the pleadings. *See Varley v. Varley*, 934 S.W.2d 659 (Tenn. Ct. App. 1996).

There is no indication that the wife objected to the proceeding on July 22, 1999, nor is there any indication that she was surprised by the husband's position. His defenses to her contempt petitions in substance raise the same issues that would support a modification of the final decree.

With respect to the issue about the lack of evidence, since we have found that the court obviously heard proof on July 22, the burden is on the wife to preserve that evidence if she intends to appeal on an issue involving its weight or admissibility. *Sherrod v. Wix*, 849 S.W.2d 780 (Tenn. Ct. App. 1992). In the absence of a transcript or statement of the evidence there is a conclusive presumption that the evidence was sufficient to support the judgment. *Coakley v. Daniels*, 840 S.W.2d 367 (Tenn. Ct. App. 1992).

While the hearing on July 22, 1999 involved an unorthodox procedure, we suspect that every trial judge in the state has decided cases under the circumstances involved in this case. Counsel appear before the court and state that certain facts are true. The court then decides the legal effect of the undisputed facts. While such a proceeding should be used with caution – and nearly without exception it is a good idea to have a record of the proceeding – the parties should be encouraged to admit facts about which there is no genuine dispute. A leading treatise points out the benefits of such admissions or stipulations:

> The practice of making such agreements or stipulations is one greatly to be commended. In construing them, the Courts will give them the force and effect contemplated by the parties at the time they were executed.
>
> For the purpose of the action, an admission made by counsel is conclusive; and full authority to make admissions is presumed. Chancellors eagerly lay hold of such admissions as the basis of their decrees. They are deemed better evidence of the facts than the finding of a jury.

*Gibson's Suits in Chancery,* § 201 (William H. Inman ed., 7th ed. 1988).

While we advise caution with respect to preserving the record, especially if there may be a dispute about the facts, we cannot condemn the practice of stipulating facts that are not disputed.

### III.

The wife asserts that she is entitled to post-judgment interest on a $700 check that was awarded to her in the final divorce decree as a division of the marital property. According to Tenn. Code Ann. § 47-14-121 interest accrues at 10% a year on judgments and decrees "from the day on which the jury or the court, sitting without a jury, returned the verdict . . . ." This statute applies to money awards in a final decree of divorce. *Inman v. Inman*, 840 S.W.2d 927 (Tenn. Ct. App. 1992).

The final decree lists the marital property awarded to each of the parties. In both lists an identical item appears: "Insurance check $700." Apparently the court divided an insurance payment equally between the wife and husband, but the decree does not award a judgment against the husband. From what can be inferred from the decree and from subsequent statements in the record, the husband had the wife's check in his possession and through an oversight he did not deliver it to her.

Therefore, we hold that since the final decree does not award a money judgment against the husband, Tenn. Code Ann. § 47-14-121 does not apply to the $700 check. Any award of interest then becomes a matter of discretion with the trial judge. Since this is not a situation in which the husband has had the use of the funds, based on the state of the record, we cannot say that she abused that discretion.

The judgment of the court below is affirmed, and the cause is remanded for any further proceedings which may be necessary. Tax the costs on appeal to the appellant, Jo Anne Hofmeister.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.