IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
ASSIGNED ON BRIEFS JUNE 6, 2001

## SHEILA SUE BYRD v. DAVID BUHL

**Direct Appeal from the Chancery Court for Montgomery County**
**No. 94-76-212; The Honorable Carol Catalano, Chancellor**

_____

**No. M2001-00070-COA-R3-CV - Filed October 12, 2001**

_____

This appeal involves a custody and visitation dispute brought by divorced parents having joint custody of their child. After the mother of the child moved out of state, the child's father petitioned the court for change of custody. The mother then counter-petitioned the court for an increase in child support. After a hearing on the matter, the court altered the previous visitation agreement, increased child support, granted the father the right to claim the child as a dependent for income tax purposes, and refused to grant the mother attorney's fees. This appeal followed and for the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Carrie W. Kersh, Clarksville, TN, for Appellant

David Buhl, Clarksville, TN, *pro se*

**OPINION**

**Facts and Procedural History**

Sheila Buhl Byrd[1] (Appellant) and David Buhl (Appellee) divorced in December 1994 after two years of marriage and the birth of a child (Child). The divorce decree incorporated a Marital Dissolution Agreement (the MDA), which vested the parties with joint custody of Child. Pursuant to the MDA, Appellant retained primary physical custody of Child and Appellee acquired visitation rights. The MDA also provided for monthly child support payments in the amount of $290.00 to be

_____

[1]It appears from the record that Sheila Buhl Byrd is now known as Mrs. Sheila Powell. For simplicity, she shall be referred to as "Appellant."

paid by Appellee to Appellant. Further, the parties were to alternate claiming Child as a deduction for income tax purposes year to year.

Appellee's visitation under the MDA included two months per year during the summer until Child reached the age of three. However, upon Child reaching the age of three, Appellee's visitation extended to every other weekend, one week every other month in conjunction with the weekend visitations, four weeks during the summer, alternating holidays, and every other Wednesday evening.

Approximately one month after the divorce decree was entered, the parties began having difficulties with one another regarding visitation and phone contact with Child. These difficulties soon culminated in a melee of petitions, counter-petitions, and allegations of wrongdoing that have continued up until this appeal. As a result of the legal feud, several orders were entered by the trial court specifically defining the rights of each party. In December 1995, the trial court issued an order that again set out the visitation rights of the parties; this time in very specific detail. However, the problems between the parties continued and the allegations of misdeeds and transgressions committed by the parties increased.

The most recent dispute, now before this Court on appeal, began in November 1998 with Appellee's filing of a motion for change of custody. In his motion, Appellee, a member of the United States Army, claimed he obtained a reassignment from Korea to Fort Campbell in Clarksville, Tennessee upon learning certain facts that demonstrated a need for change of custody of Child. Appellee alleged that Appellant had moved with Child to Ste. Genevieve, Missouri and that this move would hinder the visitation rights previously granted to him by the trial court. Appellee further alleged that the home environment provided by Appellant for Child warranted a change of custody in favor of Appellee.[2]

In Appellant's answer to Appellee's motion for change of custody, Appellant denied the allegations and petitioned the court for an increase in child support. Appellant asserted that Appellee's income had increased at least fifteen percent and, thus, she was entitled to a greater award of child support. Subsequent to further filings by each party, on April 15, 1999, the trial court entered an order stating that Appellant would be unlikely to follow the visitation agreement and granted extended visitation to Appellee until a hearing could be held on Appellee's motion for custody of Child.

The April 15 order was quickly challenged by Appellant and another rash of motions broke out among the parties. Appellant filed motions to amend the court's order, terminate extended visitation, appoint a guardian ad litem, grant additional visitation, require psychological evaluation

---

[2]Specifically, Appellee asserted in his motion that Child's "home environment is bazaar [sic], immoral, and dangerously detrimental to [Child's] moral and mental health in that [Appellant] . . . is a call girl, participates in a pornographic lifestyle on the Internet, and has had numerous sexual encounters in the home with [Child] present in the home." Appellee also noted that "the information he obtained against the mother of his son is so overwhelmingly devoid of morality and is so bazaar [sic] that it is inappropriate to describe such behavior in a [p]etition to change custody. . . ."

of Child, and establish a date to return Child to school. Appellant's motion to establish a date to return Child to school was granted on August 13, 1999 and ended the extended visitation previously granted to Appellee.

On August 29, 2000, the trial court conducted a hearing on Appellee's original motion to change custody. Following the hearing, the trial court entered an order outlining its findings of fact and altering the rights of the parties. The trial court found that Appellee's allegations regarding Appellant's lifestyle, even when taken as true, showed no disparate effects on Child. However, Appellant's move to Ste. Genevieve, Missouri, constituted a material change of circumstances requiring reconsideration of the visitation arrangements. The trial court held the fact that the parties now lived in different states rendered the previous visitation agreement unworkable. To reflect the change of circumstances, the trial court ordered that Appellant retain primary physical custody of Child and granted the following visitation to Appellee: one weekend per month (on three day weekends when available), the entire summer, and one week during Child's spring break. In addition, the parties would continue to alternate holidays with the child.

With regard to child support, Appellee was ordered to increase his monthly payment from $290.00 to $485.00. However, because Appellee would now have custody of Child during the summer, no child support would be paid during the months of June and July. Together, the net effect of the trial court's ruling increased child support by $1,370.00 per year.

The trial court additionally ordered that Appellee provide military insurance for Child and cover any associated costs for healthcare, so long as Appellant took child to military facilities when possible. Further, apparently to lessen the burden of the increased expenses for Appellee, Appellee was granted the right to claim Child as a deduction for income tax purposes every year as opposed to every other year. Finally, the trial court refused to tax Appellant's attorney's fees to Appellee.

### Issues

Appellant brings the following issues before this Court on appeal:

1.      Whether the trial court erred by granting Appellee the right to claim Child as a dependant for income tax purposes even though such relief was neither requested in the motion for change of custody nor litigated by the parties;

2.      Whether the trial court erred in refusing to grant Appellant's request for attorney's fees based on the frivolity of Appellee's motion; and

3.      Whether the visitation granted by the trial court is in Child's best interest.

Appellee brings a fourth issue before this Court on appeal:

4.      Whether the trial court erred by failing to grant Appellee's motion for change of custody.

**Law and Analysis**

Regarding Appellant's first issue, we hold that the trial court did not err in awarding Appellee the right to claim Child as a dependant for income tax purposes every year. Appellant challenges the propriety of the award only on the grounds that the award was neither requested in the motion for change of custody nor litigated by the parties. Appellant avers that the trial court only had the authority to address issues presented in the pleadings or voluntarily litigated. Because Appellant fails to allege an abuse of discretion in the trial court's determination that Appellee as opposed to Appellant deserved the deduction, we will not second guess the correctness of the decision in that respect. Thus, our review of the trial court is limited to determining whether the trial court had the authority to award Appellee the deduction.

We agree with Appellant's general assertion that a court may only decide issues and award judgments to the extent requested by the parties in their pleadings or voluntarily litigated. In Fidelity-Phenix Fire Ins. Co. of New York v. Jackson, et al., 181 S.W.2d 625 (Tenn.1944), the Tennessee Supreme Court stated, "[n]o rule is better settled than that both allegations and proof are essential to a decree or judgment and that there can be no valid decree unless the matter on which the decree is rested is plainly within the scope of the pleadings." Id. at 629. The supreme court further stated, "[t]herefore, the rule is firmly established that irrespective of what may be proved a court cannot decree to any plaintiff more than he claims in his bill or other pleading." Id. (citations omitted).

Here, however, Appellant overlooks two important facts that placed the tax deduction issue properly before the trial court. First, because Appellant petitioned the trial court for an increase in child support and an increase was granted, she opened the door for the court to examine the financial consequences to Appellee. Courts retain the discretionary power to allocate tax exemptions for minors and should consider the tax consequences of child support orders. Barabas v. Rogers, 868 S.W.2d 283, 289 (Tenn. Ct. App. 1993); Miller v. Miller, No. 02A01-9809-CH-00271, 1999 WL 329777 at *2 (Tenn. Ct. App. May 21, 1999). Thus, in adjusting the child support amount granted to Appellant, the trial court properly analyzed the tax ramifications for Appellee. The trial court's decision to designate Appellee as the party who could claim the deduction was within the court's discretion.

Second, this Court has previously held that section 152 of the Internal Revenue Code appears to make the determination of dependency exemptions for minor children an inevitable element of child custody decisions. Travis v. Travis, No. E2000-01043-COA-R3-CV, 2001 WL 261543 at *4 (Tenn. Ct. App. March 16, 2001). Here, because of the parties' motions, the trial court was deciding the custody of Child and visitation rights of the parties. Thus, the determination of custody and visitation precipitated a need to review the tax deduction issue surrounding the decision. Again, since no argument has been made questioning the application of the trial court's discretion in the matter, our inquiry into this issue necessarily ends with our conclusion that the trial court did not surpass its authority in granting the deduction to Appellant. With regard to Appellant's second issue, we hold that the trial court did not err by refusing to grant Appellant's request for attorney's fees based on the

frivolity of Appellee's motion. Section 36-5-103(c) of the Tennessee Code governs awards of attorney's fees in proceedings relating to child support and child custody:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Pursuant to this statute, attorney's fees are granted in custody decisions only at the discretion of the trial court. Where a trial court determines that awarding attorney's fees would be inappropriate, inequitable, or unnecessary, the court may properly choose not to award them. Deas v. Deas, 774 S.W.2d 167, 170 (Tenn. 1989). Thus, our review of the trial court's denial of Appellant's request for attorney's fees must focus on whether the trial court abused its discretion.

We emphasize that the grant of attorney's fees in custody cases is to protect the rights of the children, not the rights of the custodial parents. Sherrod v. Wix, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1993). Thus, as stated in Sherrod, "requiring parents who precipitate custody or support proceedings to underwrite the costs if their claims are ultimately found to be unwarranted is appropriate as a matter of policy." Id. However, this policy must still be balanced with the insight available to the trial court in determining what would be appropriate, equitable, and necessary in each case before it.

Here, the trial court's memorandum opinion proffered a reason for refusing to grant Appellant's request for attorney's fees: Appellee at least needed to bring a petition to alter the visitation agreement between the parties. (TR, Vol. I, p. 77). Apparently, the trial court deemed that even though Appellee was unsuccessful in his petition for full custody of Child, the circumstances still warranted action of some sort; namely, a modification of the visitation agreement. Judging from the record, the need to alter visitation arose from Appellant's decision to move with Child to Missouri. The trial court could easily have viewed Appellant's move as an equitable factor in refusing to grant attorney's fees, as the services of an attorney eventually would have been needed by both parties.

Appellant asserts that Appellee's claim was frivolous in two respects. First, Appellant avers that Appellee's claim for full custody, which was eventually denied, was based solely on statements concerning Appellant's lifestyle made by another of Appellant's ex-husbands. (Appellant's Brief, P. 12). This argument, however, is without merit. In Appellee's motion for change of custody, Appellee, before even mentioning Appellant's alleged lifestyle, stated that his visitation with Child would be hindered by Appellant's move with Child to Missouri.

Second, Appellant states that since Appellee was in Korea at the time of her move and was unsure of where his next military assignment would be, there would have been no reason for a change

in the visitation agreement. However, this assertion is also without merit. Appellee had been reassigned to Tennessee before filing his motion. Accordingly, at the time the motion was filed, a genuine need for modifying the visitation agreement existed. Thus, we find there is insufficient evidence to conclude that the trial court abused its discretion in refusing to grant Appellant attorney's fees.

With regard to the third and fourth issues, we hold that the trial court did not err in refusing to grant full custody to Appellee or in revising the visitation agreement in a manner consistent with Child's best interest. Our review of the trial court's custody and visitation decision is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure. Ruyle v. Ruyle, 928 S.W.2d 439, 441 (Tenn. Ct. App. 1996); Koch v. Koch, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). Rule 13(d) requires this court, in conducting a *de novo* review of the record, to presume that the trial court's factual findings are correct, unless the evidence in the record preponderates otherwise. TENN. R. APP. P. 13(d).

In applying this standard of review, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody" and that "the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." Koch, 874 S.W.2d at 575. Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves," appellate courts "are reluctant to second-guess a trial court's decisions." Gaskill v. Gaskill, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). The courts' paramount concern in a custody case is the welfare and best interest of the parties' minor children. Ruyle, 928 S.W.2d at 441; Koch, 874 S.W.2d at 575. This determination necessarily turns on the particular facts of each case. Koch, 874 S.W.2d at 575.

After an initial award of custody or visitation, a party seeking modification of the decree must show that an intervening, material change in the child's circumstances has occurred that warrants an alteration in the agreement in keeping with the child's best interests. Solima v. Solima, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998). Further, in order to justify the alteration of a custodial arrangement, the changed circumstances must "directly affect the welfare of the minor." McReynolds v. McReynolds, No. 01A01-9702-CH-00064, 1997 WL 607516 at *4 (Tenn. Ct. App. Oct. 3, 1997) (quoting Dailey v. Dailey, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981)).

Here, the trial court's opinion indicates that such a standard was indeed applied. As to Appellee's claim that Appellant's lifestyle warranted a change of primary custody, the court noted that only the testimony of immoral behavior came from Appellant's ex-husband. Further, even when assuming his testimony to be the truth, the court stated that Appellee offered no credible evidence that tended to show any disparate effects on Child's welfare. Under our standard of review, presuming the factual findings of the trial court to be correct, we affirm the trial court's decision in refusing to grant Appellee primary custody.

However, as the trial court correctly opined, other circumstances did exist that warranted an alteration of the visitation agreement. The trial court concluded that Appellant's move to Missouri

constituted a material change in Child's circumstances.  Further, this material change  resulted in a negative impact on Child because of the distance Child would have to travel for visitation with Appellee.  Presuming these factual findings to be true, the trial court correctly altered the visitation agreement to coincide with the new circumstances.

Appellant argues in her brief, however, that the visitation granted to Appellee is not in the best interest of Child.  Appellant contends that the trial court erred in ruling that the new visitation "had to be" as equivalent as possible to the previous agreement.  If this were the case, we would agree with Appellant that the wrong standard was used by the trial court. Visitation arrangements should always strive to serve the best interests of the child and not simply retain the status quo.

Our reading of the trial court's opinion, however, reveals a different stance taken by the trial court. Because of the distance between the parties, the court ruled that visitation every other weekend was unworkable.  Weekend visitation was therefore decreased to once a month and was to be taken on three day weekends, when possible, because of the time spent driving.  The one week a month that Appellee was to spend with Child was also discontinued.  This modification resulted in Child losing considerable time with Appellee.  The opinion recites only that it is "[t]he court's intention to make up for that."   Nowhere does the opinion indicate that the court felt constrained by the previous agreement.

Based on the trial court's desire to create other times for Appellee to spend time with Child, the court extended the summer visitation from four weeks to the entire summer.  Further, the court determined that one week during Child's spring break was to be spent with Appellee.  In the end, by our math, Appellant will actually get to spend more time with Child now than under the previous agreement.  We see no reason to question the trial court's judgment in selecting the visitation granted to the parties and therefore affirm its decision.

## Conclusion

For the foregoing reasons, the decision of the trial court is affirmed.  Costs of this appeal are taxed equally against the Appellant, Sheila Sue Byrd, and the Appellee, David Buhl, for which execution may issue if necessary.

 

_____

ALAN E. HIGHERS, JUDGE